RECORD NO. 15-4301

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## DONALD EUGENE WALKER,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO**

───────────

**BRIEF OF APPELLANT**

───────────

John S. Coalter
COALTER LAW, P.L.L.C.
910 North Elm Street
Greensboro, North Carolina 27401
(336) 275-5885

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ..............................................................iii

JURISDICTION AND TIMELINESS OF APPEAL .....................................1

    A.    BASIS FOR SUBJECT MATTER JURISDICTION IN
        THE DISTRICT COURT ..........................................................1

    B.    BASIS FOR JURISDICTION IN THE COURT OF
        APPEALS.........................................................................1

STATEMENT OF THE ISSUES .................................................2

STATEMENT OF THE CASE ...................................................2

    STATEMENT OF THE FACTS ..........................................4

SUMMARY OF ARGUMENT ...................................................11

ARGUMENT .........................................................................12

    I.    THE DISTRICT COURT ABUSED ITS DISCRETION
       BY DENYING THE DEFENDANT'S MOTION TO
       WITHDRAW GUILTY PLEA .................................................12

        A.    Standard of Review.......................................................12

        B.    Discussion .................................................................12

    II.    THE DEFENDANT'S CONVICTION UNDER 18
        U.S.C. § 924(c) MUST BE REVERSED BECAUSE
        KIDNAPPING UNDER 18 U.S.C. § 1201(a)(1) IS NOT
        A "CRIME OF VIOLENCE" IN LIGHT OF *JOHNSON
        V. UNITED STATES*..........................................................19

        A.    Standard of Review.......................................................19

B.    Discussion ..................................................................... 19

CONCLUSION........................................................................... 24

REQUEST FOR ORAL ARGUMENT ....................................... 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

<u>**CASES**</u>

*Bousley v. United States*,
     523 U.S. 614 (1998) ........................................................................ 23

*Descamps v. United States*,
     133 S. Ct. 2276 (2013) .................................................................... 20

*Johnson v. United States*,
     135 S. Ct. 2551 (2015) ............................................................. *passim*

*Strickland v. Washington*,
     466 U.S. 668 (1984) ................................................................. 16, 17

*United States v. Craig*,
     985 F.2d 175 (4th Cir. 1992) ........................................................ 18

*United States v. Delfino*,
     510 F.3d 468 (4th Cir. 2007), *cert. denied*,
     555 U.S. 812 (2008) ........................................................................ 13

*United States v. Fulks*,
     454 F.3d 410 (4th Cir. 2006) ........................................................ 19

*United States v. Johnson*,
     410 F.3d 137 (4th Cir. 2005) ........................................................ 23

*United States v. Lambey*,
     924 F.2d 1389 (4th Cir. 1992) ...................................................... 12

*United States v. Lentz*,
     383 F.3d 191 (4th Cir. 2004) ........................................................ 21

*United States v. Moore*,
     931 F.2d 245 (4th Cir. 1991) ................................................ 11, 13

*United States v. Nicholson,*
  676 F.3d 376 (4th Cir. 2012) ............................................................ 13

*United States v. Torres-Miguel,*
  701 F.3d 165 (4th Cir. 2012) ............................................................ 20

## **STATUTES**

18 U.S.C. § 2 .......................................................................................... 1, 2

18 U.S.C. § 922(g)(1) ............................................................................ 1, 3

18 U.S.C. § 924(a)(2) ............................................................................ 1, 3

18 U.S.C. § 924(c) ............................................................................ *passim*

18 U.S.C. § 924(c)(1)(A)(ii) ................................................................ 1, 2

18 U.S.C. § 924(c)(3) .......................................................................... 19, 21

18 U.S.C. § 924(c)(3)(A) ................................................................ 12, 19, 20

18 U.S.C. § 924(c)(3)(B) ................................................................ 12, 19, 22

18 U.S.C. § 1201(a)(1) ..................................................................... *passim*

18 U.S.C. § 3231 ........................................................................................ 1

18 U.S.C. § 3559(f)(2) ............................................................................... 6

28 U.S.C. § 1291 ........................................................................................ 1

## **RULES**

Fed. R. App. P. 3 ....................................................................................... 2

Fed. R. App. P. 4 ....................................................................................... 2

Fed. R. Crim. P. 11 ...................................................................... 12, 13, 14, 15

Fed. R. Crim. P. 11(d)(2)(B) ................................................................ 11, 12

## <u>JURISDICTION AND TIMELINESS OF APPEAL</u>

**A.    BASIS FOR SUBJECT MATTER JURISDICTION IN THE DISTRICT COURT**

Appellant/Defendant Donald Eugene Walker ("Defendant") was named in a four-count Bill of Indictment by a Federal Grand Jury for the Middle District of North Carolina on July 28, 2014. (J.A. 10-13). The Defendant was charged with (Count I) Kidnapping of a Minor in violation of Title 18, United States Code, Sections 1201(a)(1) and 2, (Count II) Kidnapping in violation of Title 18, United States Code, Sections 1201(a)(1) and 2, (Count III) Brandishing a Firearm during and in relation to a "crime of violence" in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and (Count IV) Possession of a Firearm by a Felon in violation of Title 18, United States Code, Section 922(g)(1) & 924(a)(2). (*Id.*). The Defendant was served with an Arrest Warrant on August 21, 2014. (J.A. 3).

Pursuant to these statutes, and Title 18 U.S.C. § 3231, subject matter jurisdiction was conferred upon the United States District Court.

**B.    BASIS FOR JURISDICTION IN THE COURT OF APPEALS**

Subject matter jurisdiction was conferred upon the Fourth Circuit Court of Appeals pursuant to 28 U.S.C. § 1291, as an appeal from a final conviction and sentence in the United States District Court for the Middle

District of North Carolina.  The judgment in this case was originally

docketed on May 22, 2015. (J.A. 205-210).  The Defendant entered Notice

of Appeal in a timely manner in compliance with Rules 3 and 4 of the

Federal Rules of Appellate Procedure on May 29, 2015. (J.A. 211-212).

This is an appeal from a final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

I.      Whether the District Court committed reversible error by denying the

        Defendant's Motion to Withdraw his Guilty Plea?

II.     Whether the Defendant's conviction under 18 U.S.C. § 924(c) must be

        reversed because Kidnapping under 18 U.S.C. § 1201(a)(1) is not a

        "crime of violence" in light of *Johnson v. United States*?

## STATEMENT OF THE CASE

On July 28, 2014, the Defendant was named in a four-count Bill of

Indictment, charging him with (Count I) Kidnapping of a Minor in violation

of Title 18, United States Code, Sections 1201(a)(1) and 2, (Count II)

Kidnapping in violation of Title 18, United States Code, Sections 1201(a)(1)

and 2, (Count III) Brandishing a Firearm during and in relation to a "crime

of violence" in violation of Title 18, United States Code, Section

924(c)(1)(A)(ii) and (Count IV) Possession of a Firearm by a Felon in

2

violation of Title 18, United States Code, Section 922(g)(1) & 924(a)(2). (J.A. 10-13).

On November 4, 2014, the Defendant appeared before the Honorable United States District Judge William L. Osteen, Jr., for a change of plea hearing pursuant to a plea agreement filed that same day. (J.A. 21-47). Because of an error in the plea agreement regarding the mandatory minimum sentence in Count I, Judge Osteen continued the hearing until November 10, 2014. (*Id.*). A revised plea agreement was filed on November 10, 2014. (J.A. 86-93). The Defendant pled guilty later that day to (Count II) Kidnapping and (Count III) Brandishing a Firearm during or in relation to a crime of violence. (J.A. 48-85). On January 12, 2015, the Defendant filed a *pro se* Motion to Withdraw Plea of Guilty. (J.A. 5). After Defendant's original counsel was allowed to withdraw, Defendant's new counsel filed a Motion to Withdraw Plea of Guilty on February 4, 2015. (J.A. 94-97). A hearing on defense counsel's Motion to Withdraw Guilty Plea was conducted on February 20, 2015. (J.A. 108-174). At the conclusion of the hearing, the District Court denied the Motion. (J.A. 172). The District Court conducted Defendant's Sentencing Hearing on April 1, 2015. (J. A. 175-204). The Defendant received a sentence of three hundred and twenty-four

(324) months in Count II, followed by eighty-four (84) months in Count III to run consecutively. (J.A. 205-210).

**STATEMENT OF THE FACTS**

The Government's evidence tended to show that on August 14, 2013, deputies with Chatham County Sheriff's Office responded to a reported assault at the Wal-Mart located in Siler City, N.C. (J.A. 14). The victim, D.M., stated that he had been pistol whipped and that his assailant was still in a white Lexus automobile in the Wal-Mart parking lot. (*Id.*). Deputies found the vehicle described by D.M. and located the Defendant seated in the front passenger seat. (J.A. 14-15). When questioned by the deputies, the Defendant indicated that the subject in Wal-Mart had been jumped earlier and had offered the Defendant money if he would "muscle" the person responsible for the assault. (J.A. 15). A search of the Defendant yielded a wallet belonging to C.W. (*Id.*). The Defendant later testified that he had obtained the wallet from the console of the Lexus which belonged to D.M. (J.A. 149). A search of the Lexus revealed a black semi-automatic Ruger .22 caliber handgun. (J.A. 15, 122).

Deputies located D.M. in the Wal-Mart. (J.A. 16). He indicated that his family was still located at his home and possibly in danger. (*Id.*). Deputies responded to D.M.'s residence and found four individuals inside,

4

victims C.C., C.W., K.L. and the four year old daughter of D.M., Minor A.
(*Id.*).  They advised the deputies that, earlier that night, two black males
wearing masks and armed with a pistol and rifle kicked in the front door of
the residence and demanded money and drugs. (*Id.*).  The assailants ordered
everyone except D.M. into the closet. (*Id.*).  One of the assailants then
ordered D.M. to show him where property was located in the residence. (J.A.
18).  D.M. indicated that, while he didn't have what the intruders were
looking for, he could go to an automated teller machine and withdraw
money. (*Id.*).  D.M. indicated that the Defendant ordered D.M. to drive him
to the ATM and get the money. (*Id.*).  Once they arrived at Wal-Mart, D.M.
went inside and notified the authorities of the assault. (J.A. 14).  The
remaining victims remained at the residence, presumably guarded by the
other assailant.

The Defendant was arrested that same day on numerous State charges
including Robbery With a Dangerous Weapon, First Degree Kidnapping,
First Degree Burglary. (J.A. 222).  On July 28, 2014, the Defendant was
indicted in the Middle District of North Carolina and charged with
Kidnapping a Minor, Kidnapping, Brandishing a Firearm in relation to a
crime of violence and Possession of a Firearm by a Felon. (J.A. 10-13).
Attorney Greg Davis was appointed to represent the Defendant on August

5

21, 2014. (J.A. 3).  According to the Defendant, he only met with Mr. Davis three or four times. (J.A. 118).  However, Mr. Davis never went over the actual evidence in the case with the Defendant. (J.A. 118-119).  Mr. Davis merely advised the Defendant of the charges against him. (J.A. 119).  On or about November 3, 2014, Mr. Davis presented a plea agreement to the Defendant.  The plea agreement called for the Defendant to plead guilty to Count One of the Indictment. (J.A. 40-47).  Section 2(a) of the plea agreement advises that the statutory penalty for Count I "provides that he shall be sentenced to a mandatory minimum term of imprisonment of twenty years, or for life." (J.A. 41).  Mr. Davis recommended that the Defendant accept the plea agreement (J.A. 28) and the Defendant signed it (J.A. 47). The Factual Basis was filed on November 3, 2014. (J.A. 14-20).

The change of plea hearing was held before United States District Judge Osteen on November 4, 2014. (J.A. 21-39).  During that hearing, the Court noted that the mandatory minimum penalty for Count One cited in the plea agreement was incorrect. (J.A. 35).  The Court found that the statutory penalty for Kidnapping a Minor in Count I was actually 25 years to life pursuant to 18 U.S.C. § 3559(f)(2). (J.A. 35-36).  Based on this discrepancy, Judge Osteen continued the matter for further proceedings. (J.A. 38-39).

6

On or about November 9, 2014, Mr. Davis presented the Defendant with a revised plea agreement.  Under the terms of this agreement, the Defendant would plead guilty to Count II (which carried a statutory sentence of "any term of years or for life") and Count III (which carries a statutory sentence of seven years to run at the expiration of Count II). (J.A. 86-93). The revised plea agreement also includes a waiver of his right to appeal. (J.A. 91).  According to the Defendant, Mr. Davis just told him to just sign the plea agreement. (J.A. 120).  Mr. Davis went on to say, that if the Defendant didn't want the plea, the Defendant should have the U.S Marshall's inform Mr. Davis and they would not proceed with the plea. (*Id.*). Despite the fact that he didn't understand the revised plea agreement, the Defendant signed it anyway. (J.A. 120-121).  Mr. Davis had advised the Defendant that he was "going to get time no matter what." (J.A. 154).  Mr. Davis advised that the Defendant should take the revised plea agreement to mitigate his sentence as much as possible. (*Id.*).  The Defendant was "basically illiterate to law." (J.A. 155).  Because of this, he relied on his attorney's advice with regard to the plea, despite not having seen the discovery in his case. (J.A. 125, 118).

On November 10, 2014, the Defendant appeared before Judge Osteen to enter a guilty plea along with two other unrelated defendants.  The

Defendant stated under oath that he understood the Indictment and Revised Plea Agreement, that he was satisfied with his legal counsel, that he understood that statutory penalties, that he understood the elements of the offenses he was pleading guilty to and that he was in fact guilty of those offenses. (J.A. 48-85). The Defendant later admitted that many of these answers were untruthful. He explained that he was going with his lawyer and trying to do what was best for himself. (J.A. 144). On November 10, 2014, Judge Osteen accepted the Defendant's guilty plea pursuant to the revised plea agreement and set sentencing in his case for April 1, 2015. (J.A. 83-85).

After pleading guilty, the Defendant began to receive police reports regarding his case from his mother. In the Middle District of North Carolina, paper copies of Federal discovery may not be left with a defendant as part of the standard discovery agreement. However, the Defendant's State attorney, Mr. Richardson, had obtained discovery on the State charges while the Defendant was in custody and provided the reports to the Defendant. (J.A. 114). The Defendant had given the discovery to his mother and she was gradually sending the reports back to the Defendant a little at a time. (J.A. 115). As the Defendant read through his discovery, he notices important discrepancies that Mr. Davis had not pointed out to him. The

Defendant first learned that the victim had described the handgun used in the assault as a chrome on about November 10, 2014. (J.A. 115). However, the Defendant had never seen a description of the gun taken from the Lexus. (J.A. 116). It wasn't until he saw the police reports that he realized that the firearm taken from the Lexus was a "black-on-black short barrel" handgun. (J.A. 122).

Mr. Davis had also failed to advise the Defendant of the physical differences in the description of the assailant and the Defendant. The victim's described the assailants as two 6-foot black males. (J.A. 116). The Defendant is only 5'6 ½" tall. (*Id.*). The Defendant didn't learn of these issues until reading the police reports in December of 2014. (*Id.*). The Defendant also began to review the plea agreement, Indictment and think about what Mr. Davis had told him. "I'm saying some of the words I didn't truly understand until I got out my dictionary and stated breaking down the words getting a clear understanding. You're thinking it's meaning one word when it's actually meaning something totally different." (J.A. 125). At this point, the Defendant began to doubt Mr. Davis' effectiveness.

On December 10, 2014, Mr. Davis and a United States Probation Officer met with the Defendant for his PreSentence Report interview. (J.A. 125-26). Prior to the interview, the Defendant told Mr. Davis that he wanted

to withdraw his guilty plea. (J.A. 126).  There was some delay in filing his

Motion to Withdraw Guilty Plea because Mr. Davis was unavailable in

December, so the Defendant himself wrote Judge Osteen of his desire to

withdraw his guilty plea on January 6, 2015. (J.A. 126-127).  Mr. Davis filed

a Motion to Withdraw as counsel on January 12, 2015, which was granted

on January 15, 2015. (J.A. 5).

Undersigned counsel was assigned to represent the Defendant. (*Id.*).

A Motion to Withdraw Guilty Plea was filed on February 6, 2015, alleging

that the Defendant's November 10, 2014, guilty pleas were not knowing and

voluntary because 1) Mr. Davis had not informed the Defendant of the

discrepancies in the victim's descriptions of the assailant and the firearm,

2) the Defendant believed that a new factual basis should have been filed

with the revised plea agreement, 3) the Defendant believed that as the statute

numbers cited in the Indictment were the same for Count I and Count II, the

penalties should be the same and 4) the Defendant did not understand the

plea agreement, Indictment and comments by defense counsel. (J.A. 94-97).

On February 20, 2015, a hearing was held before Judge Osteen on the

Defendant's Motion to Withdraw Guilty Plea. (J.A. 108-174).  The

Defendant testified at length.

At the conclusion of the hearing, the District Court denied the Motion. (J.A. 172).  The District Court conducted Defendant's Sentencing Hearing on April 1, 2015. (J.A. 175-204).  The Defendant received a sentence of three hundred and twenty-four (324) months in Count II, followed by eighty-four (84) months in Count III to run consecutively. (J.A. 205-210).

## **SUMMARY OF ARGUMENT**

The District Court erred in denying the Defendant's Motion to Withdraw Guilty Plea after a hearing on the issue on February 20, 2015. Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw his guilty plea after the court accepts the plea but before sentencing if the defendant can show a fair and just reason for the withdrawal.  In compliance with that rule, the Defendant in his testimony on February 20, 2015, provided numerous fair and just reasons for requesting the withdrawal, including facts that amount to ineffective assistance of counsel.  A review of the factors set out in *United States v. Moore*, 931 F.2d 246, 248 (4th Cir. 1991) shows that the District Court abused its discretion in denying the Defendant's motion.

In addition, the Defendant's conviction in Count III for Brandishing a Firearm during and in relation to a crime of violence (namely Kidnapping, 18 U.S.C. § 1201(a)(1)) in violation of 18 U.S.C. § 924(c) should be

11

vacated. Kidnapping as proscribed by 18 U.S.C. § 1201(a)(1) categorically fails to constitute a crime of violence under § 924(c)(3)(A)(force clause). Kidnapping may be committed by inveigling or decoying the victim without the application of violent physical force. Moreover, pursuant to the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the "residual clause" within § 924(c)(3)(B) is unconstitutionally vague and therefore cannot be used as the basis to include Kidnapping as a "crime of violence".

## ARGUMENT

### I.   THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING THE DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA.

#### A.   Standard of Review

The Court of Appeals' review of the District Court's denial of a defendant's motion to withdraw his guilty plea is "limited to the question of whether the district court abused its discretion." *United States v. Lambey*, 924 F.2d 1389, 1393 (4th Cir. 1992)(en banc).

#### B.   Discussion

Federal Rule of Criminal Procedure 11 authorizes the withdrawal of a guilty plea before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A

defendant has no absolute right to withdraw his guilty plea. *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991).  The district court has discretion to decide whether a "fair and just reason" exists upon which to base a withdrawal. *Id.*  "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007), *cert. denied*, 555 U.S. 812 (2008).

An important consideration in determining whether a fair and just reason for withdrawal exists is the Rule 11 colloquy. *United States v. Nicholson*, 676 F.3d 376, 384-385 (4th Cir. 2012).  The Court of Appeals has also articulated a nonexclusive list of factors for considering a withdrawal motion:

> (1) Whether the defendant has offered credible evidence that the plea was not knowing and not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between entering the plea and filing the motion, (4) whether the defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Moore*, 931 F.2d at 248.

A fair consideration of these factors leads to the conclusion that the District Court failed to consider judicially recognized factors constraining its

13

exercise of discretion in denying the Defendant's Motion to Withdraw Guilty Plea. Thus, the District Court abused its discretion.

It is abundantly clear in viewing the circumstances leading up to the Rule 11 colloquy that the guilty plea entered by the Defendant on November 10, 2014, was not made knowingly and voluntarily. The Defendant is not an educated man. He indicated that he reads at a ninth or tenth grade level. (J.A. 112). He worked "cleaning up" at a food storage business. (J.A. 113). He has a history of mental issues that inhibits his ability to concentrate. (J.A. 112). In his limited interaction with his attorney Mr. Davis, he had difficulty understanding the Indictment, plea agreement and evidence. The Defendant would need to consult his dictionary to try and determine what Mr. Davis had said. (J.A. 125). The Defendant was "basically illiterate at law". (J.A. 155).

The circumstances of the November 10, 2014, change of plea hearing were difficult as well. Mr. Davis presented the revised plea agreement to the Defendant on November 9, 2014, the day before the change of plea hearing. (J.A. 93, 120). Mr. Davis just told the Defendant to sign the revised plea agreement. (J.A. 120). The Defendant was confused about the statutory penalties for Count I and Count II of the Indictment. (J.A. 117-118). He also believed that a new Factual Basis would be filed with the revised plea

agreement. (J.A. 120). When the Defendant appeared before Judge Osteen for the Rule 11 colloquy, he was not alone; two other defendants had their change of plea hearing at the same time. (J.A. 48-85). Relying on his attorney's advice regarding the revised plea, the Defendant answered Judge Osteen's questions like the other defendants did. (J.A. 118, 125, 144).

However, at the February 20, 2015, hearing on his withdrawal motion, the Defendant asserted his legal innocence. He specifically stated that his answer to Judge Osteen regarding his actual guilt was not true. (J.A. 125). The Defendant had previously asserted his actual innocence in his PreSentence Report Review filed on February 4, 2015. (J.A. 213-215). In that document, the Defendant objected to Paragraphs 7, 9 & 10 of the PSR, indicating that he "denies being the perpetrator of these offenses and was not present at D.M.'s residence". (J.A. 213). The Defendant reasserts his statement given to law enforcement in the Wal-Mart parking lot stating that the subject in Wal-Mart (D.M.) had been jumped earlier and had offered the Defendant money if he would "muscle" the person responsible for the assault. (J.A. 15).

The delay between entering his guilty plea and filing the motion to withdraw was short. The Defendant plead guilty pursuant to the revised plea agreement on November 10, 2014. His letter to Judge Osteen asking to

withdraw his guilty plea was filed on January 12, 2015, but the Defendant indicated that he wrote the letter on January 6, 2015. (J.A. 3, 126-127). However, the Defendant told Mr. Davis that he wanted to withdraw his guilty plea as early as December 10, 2015. (J.A. 126). Mr. Davis did not file a motion to withdraw the guilty plea; he simply told the Defendant to write Judge Osteen. (J.A. 127).

Another critical issue is whether the Defendant had the close assistance of competent counsel. The Defendant contends that Mr. Davis was constitutionally ineffective. Before deciding whether to plead guilty, a defendant is also entitled to "the effective assistance of competent counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Ineffective assistance of counsel claims are analyzed pursuant to a two-pronged test set forth in *Strickland*. Under the first prong, the Court must determine whether counsel's representation "fell below an objective standard of reasonableness." *Strickland* at 688. The second prong requires consideration of whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. There are certain basic duties entailed in the representation of a criminal defendant. *Strickland* at 689. Defense counsel

has a duty, among other things, to consult with his client, to keep his client informed, to investigate the case and maintain competent legal skills . *Id.*

Mr. Davis' performance in the Defendant's case fell below an objective standard of reasonableness. According to the Defendant, Mr. Davis only met with the Defendant three or four times. (J.A. 118). Mr. Davis never went of the actual evidence in the case with the Defendant. (J.A. 118-119). Mr. Davis never informed the Defendant of the discrepancies involving the description of the assailant and the description of the handgun used in the crime. (J.A. 115-116, 122). The Defendant received the police reports about his case from his mother. (J.A. 119). The initial plea agreement signed by Mr. Davis had an incorrect statutory term of imprisonment, an important fact. (J.A. 40, 35-37). Mr. Davis provided the revised plea agreement to the Defendant and just told him to sign it. (J.A. 120). Mr. Davis did not file a motion to withdraw the guilty plea; he simply told the Defendant to write Judge Osteen. (J.A. 127). But for counsel's unprofessional errors, the result of the proceeding would have been different. The Defendant would never have plead guilty. (*Id.*).

Allowing the Defendant's withdrawal motion would not have prejudiced the Government or inconvenienced the court. The Defendant was arrested by State authorities on August 14, 2013. (J.A. 222). He was not

17

Indicted on the instant charges until July 28, 2014. (J.A. 10). The Defendant notified his attorney of his desire to withdraw his guilty plea exactly one month after entering it. The Government offered no separate evidence of prejudice at the hearing on the Defendant's motion. (J.A. 171). Moreover, any inconvenience caused by granting the Defendant's motion pales in comparison to the need to afford the Defendant all of his constitutional protections in light of the thirty-four year sentence he is facing.

Lastly, the revised plea agreement does contain an appeals waiver. (J.A. 91). However, because the grounds for the Defendant's appeal is the denial of his Motion to Withdraw Guilty Plea, the appeals waiver does not warrant dismissal of the Defendant's appeal. *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1992). Additionally, the Defendant's claim of ineffective assistance of counsel may be pursued on direct appeal because it is relevant to whether there was a "fair and just" reason to withdraw the Defendant's guilty plea. *Id.*

## II. THE DEFENDANT'S CONVICTION UNDER 18 U.S.C. § 924(c) MUST BE REVERSED BECAUSE KIDNAPPING UNDER 18 U.S.C. § 1201(a)(1) IS NOT A "CRIME OF VIOLENCE" IN LIGHT OF *JOHNSON V. UNITED STATES*.

### A. Standard of Review

The Court of Appeals reviews the district court's ruling concerning the constitutionality of a statute *de novo*. *United States v. Fulks*, 454 F.3d 410, 437 (4th Cir. 2006).

### B. Discussion

The Court must reverse the Defendant's conviction for violating 18 U.S.C. § 924(c) because the predicate Kidnapping offense as defined by 18 U.S.C. § 1201(a)(1) does not qualify as a "crime of violence" as a matter of law. The relevant portion of § 924(c) defining a "crime of violence" has two clauses. The first clause [§ 924(c)(3)(A)] is commonly referred to as the force clause. The other [§ 924(c)(3)(B)] is commonly referred to as the "residual" clause. Kidnapping pursuant to 18 U.S.C. § 1201(a)(1) categorically fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause because the offense can be committed through inveigling or decoying, neither of which require violent physical force. Finally, in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), § 924(c)(3)(B)'s residual clause is constitutionally incapable of supporting a conviction due to vagueness.

19

To determine whether a predicate offense qualifies as a "crime of violence" under § 924(c), courts use the categorical approach. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). This approach requires that courts "look only to the statutory definition – i.e., the elements – of a defendant's [offense] and not the particular facts underlying" the offense in determining whether the offense qualifies as a "crime of violence". *Descamps*, 133 S. Ct. at 2283. Under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the conduct covered by the statute, including the most innocent conduct, matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). Kidnapping, as defined in 18 U.S.C. § 1201(a)(1) does not qualify as a "crime of violence" because it lacks an element of "physical force" required by § 924(c)(3)(A). "Physical force" is violent force or "strong physical force" that is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

Title 18, Section (a)(1) provides in pertinent part:

**(a)** Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when –

> **(1)** the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

There is no requirement that physical force be used to accomplish the seizure of the victim. Trickery is sufficient. In *United States v. Lentz*, 383 F.3d 191 (4th Cir. 2004), the Fourth Circuit reversed the district court's judgment of acquittal where a defendant tricked the victim into traveling from her home in Virginia to his home in Maryland under the false pretense that their daughter had arrived and needed to be picked up. *Lentz* at 200. The Court found that "the government presented sufficient evidence to support the conclusion that Lentz inveigled Doris into traveling from her home to his, thereby satisfying the seizure element of the Act." *Id.*

Kidnapping also fails to qualify as a "crime of violence" under § 924(c)(3)'s residual clause because that clause suffers from the same constitutional infirmity as the residual clause of the Armed Career Criminal Act which was found to be unconstitutional in *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court decided that the ACCA's residual clause is unconstitutionally vague, but the reasoning of the Court applies equally to the parallel "crime of violence" definition in § 924(c)(3)'s residual clause. *Johnson* held that the analytical process that

21

the ACCA demands for determining whether a felony qualifies as "violent" results in unpredictability, guesswork, and arbitrary enforcement.

The ACCA requires "a court to picture the kind of conduct that the crime involves in the "ordinary case" and judge whether that "abstraction" presents a serious risk of injury. But "grave uncertainty" surrounds what constitutes the hypothetical "ordinary case." A court must also quantify the risk of that "ordinary case" by comparing it to another hypothetical "ordinary case" – the judicially imagined ordinary case of certain enumerated offenses listed in the ACCA. This too results in a wide-ranging inquiry, unbounded by predictable standards. Therefore, the residual clause is void for vagueness and denies defendants due process.

Section 924(c)(3)(B) employs the identical technique of picturing the hypothetical "ordinary case" for categorizing predicate felonies as "crimes of violence."  Like the ACCA, § 924(c)(3)(B) also requires courts to apply the categorical approach to define the "ordinary case" of a felony statute and to assess the risk involved in that "ordinary case."  *Johnson*, however, invalidated the "ordinary case" inquiry. Since § 924(c)(3)(B) requires the same "ordinary case" review as the ACCA residual clause, courts cannot apply the residual clause in § 924(c)(3)(B) without violating due process.

Lastly, the revised plea agreement does contain an appeals waiver. (J.A. 91). However, an appeals waiver has no binding effect if the defendant did not enter into it knowingly and voluntarily. *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005). In the instant case, the Defendant did not knowingly and intelligently agree to waive his right to appeal because neither party to the revised plea agreement nor the court could have anticipation the Supreme Court decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) which by inference invalidates as unconstitutional one of the offenses (Count III) to which the Defendant pled guilty. The Supreme Court has recognized that a defendant cannot be said to have intelligently entered a guilty plea "if neither he, nor his counsel, nor the court correctly understood the essential elements of the crime," as those elements were interpreted by the Supreme Court after entry of the plea. *Bousley v. United States*, 523 U.S. 614, 618-19 (1998). The Defendant pled guilty on November 10, 2014. Johnson was not decided until June 26, 2015. Because the *Johnson* decision changes an element of the 18 U.S.C. § 924(c) charge, unknown to any of the parties to his guilty plea, his appeal waiver was not knowing and voluntary.

## **CONCLUSION**

For the reasons stated above, the Defendant Donald Eugene Walker respectfully asks the Court of Appeals for the Fourth Circuit to vacate the judgment imposed in the U.S. District Court for the Middle District of North Carolina, order that his guilty pleas be stricken and/or vacate his conviction for 18 U.S.C. § 924(c) and remand has case to the District Court for further proceedings.

## **REQUEST FOR ORAL ARGUMENT**

Defendant Donald Eugene Walker respectfully requests oral argument on the contested issues raised above.

Respectfully submitted this 5th day of October, 2015.

*/s/J. Scott Coalter*
J. Scott Coalter
*Coalter Law, P.L.L.C.*
910 N. Elm Street
Greensboro, NC 27401
(336) 275-5885
State Bar No. 23042

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*5,110*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>October 5, 2015</u>          <u>/s/ J. Scott Coalter          </u>
                                        *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 5th day of October, 2015, I caused this

Brief of Appellant and Joint Appendix to be filed electronically with the

Clerk of the Court using the CM/ECF System, which will send notice of

such filing to the following registered CM/ECF users:

> JoAnna G. McFadden
> OFFICE OF THE U.S. ATTORNEY
> 101 South Edgeworth Street, 4th Floor
> Greensboro, North Carolina 27401
> (336) 333-5351
>
> *Counsel for Appellee*

I further certify that on this 5th day of October, 2015, I caused the

required copies of the Brief of Appellant and Joint Appendix to be hand filed

with the Clerk of the Court and a copy of the sealed volume of the Joint

Appendix to be served, via UPS Ground Transportation, upon counsel for

the Appellee, at the above address.

> /s/ J. Scott Coalter
> *Counsel for Appellant*